IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EMORY CHILES,

        Petitioner,

                                Civil Action No. 1:20CV80
                                Criminal Action No. 1:18CR7
v.                                 (Judge Keeley)

UNITED STATES OF AMERICA,

        Respondent.

## MEMORANDUM AND OPINION ORDER DENYING
## § 2255 PETITION AND MISCELLANEOUS MOTIONS

Pending before the Court is the motion filed by the petitioner, Emory Chiles ("Chiles"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 129),[1] as well as three motions supplementing his § 2255 petition (Dkt. Nos. 134, 137, 139), three motions for immediate discharge[2] (Dkt. Nos. 142, 144, 156), and a motion seeking a ruling on his § 2255 petition (Dkt. No. 159). For the reasons that follow, the Court **DENIES** Chiles's § 2255 petition (Dkt. No. 129) and the accompanying supplemental motions (Dkt. Nos. 134, 137, 139), and **DISMISSES** Civil Action No. 1:20CV80 **WITH PREJUDICE**. Additionally, the Court **DENIES**

---

[1] Unless otherwise noted, all docket numbers refer to Criminal Action No. 1:18CR7.
[2] Chiles styles these three motions as (1) "Motion for Immediate Discharge" (Dkt. No. 142), (2) "Supplemental Motion for Immediate Release" (Dkt. No. 144), and (3) "Motion to be Entirely Discharged from Judgment and Commitment Without Reversal of the Judgment" (Dkt. No. 156).

CHILES v. UNITED STATES                           1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

Chiles's three motions for immediate discharge (Dkt. Nos. 142, 144, 156) and **DENIES** as moot his motion seeking a ruling (Dkt. No. 159).

## I. Factual and Procedural Background

Chiles's underlying criminal case arose following a traffic stop on November 2, 2017. That night, Monongalia County Sheriff's Department Deputy Dan Oziemblowsky ("Oziemblowsky") and Sergeant Randy Stockett ("Stockett"), a K-9 handler, were on traffic patrol on Interstate 79 South (Dkt. No. 108 at 42-43, 76-77). At some point, a Volkswagen Golf passed their vehicles, and Oziemblowsky noticed that the passenger-side tail light was burned out. Id. at 43. Oziemblowsky and Stockett then began to follow the vehicle. Id. at 43-44. While doing so, Oziemblowsky ran its license plate through a national database and learned that it belonged to a different vehicle. Id.

Based on that, the officers initiated a traffic stop. Id. at 44. Oziemblowsky approached the driver's side of the vehicle, and Stockett walked to the passenger's side. Id. at 77. The driver and passenger were Trevor Townsend ("Townsend") and Emory Chiles, respectively. Id. at 45. Townsend admitted to Oziemblowsky that

CHILES v. UNITED STATES                              1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

the vehicle did not have a current license or registration, id. at 45, and Chiles told Stockett that he had been incarcerated for drug and firearm offenses. Id. at 84. Oziemblowsky and Stockett then agreed that Stockett should conduct a K-9 drug sniff of the vehicle. Id. at 46. Townsend and Chiles were asked to exit the vehicle while Stockett conducted the K-9 drug sniff. Id. at 47.

Oziemblowsky meanwhile spoke with Chiles and Townsend and inquired whether Chiles had any weapons on his person. Id. at 48. Chiles responded that he had left a knife in the car, but refused to submit to a frisk. Id. Townsend, however, agreed to a pat down. Id. Eventually, Stockett's K-9 alerted, indicating that narcotics were present in the vehicle. Id. at 47-48. Soon thereafter, as Stockett began to search the vehicle, Oziemblowsky called for help with Chiles, who had become generally uncooperative and had refused to follow Oziemblowsky's instructions to remain in place. Id. at 48, 79. Oziemblowsky and Stockett then detained Chiles and, upon conducting a frisk of his person, discovered a nine-millimeter handgun and over 100 grams of heroin. Id. at 17, 48.

As a result of these events, Chiles was arrested and charged by the State of West Virginia with possession of a firearm by a

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

**MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS**

prohibited person and possession with intent to deliver (Dkt. No. 96 at 17). Thereafter, on January 24, 2018, the United States Attorney's Office obtained a criminal complaint (Dkt. No. 1) and lodged a federal detainer against Chiles (Dkt. No. 129-4 at 28). On that same day, the state dismissed its pending charges against Chiles (Dkt. Nos. 129-4 at 27).

On February 6, 2018, Chiles was named in a three-count indictment in the Northern District of West Virginia. His federal charges included possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); using a firearm during and in relation to a drug trafficking offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A)(i); and unlawfully possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)[3] (Dkt. No. 5). With respect to the charge of unlawful possession of a firearm, the indictment did not include the element of knowledge of prohibited status later required by Rehaif v. United States, 139 S. Ct. 2191 (2019) (holding that the Government not only must prove that a defendant

---

[3] Chiles was previously convicted for Felon in Possession of a Firearm in the Northern District of West Virginia, Criminal Case No. 5:05CR18. He was sentenced to 120 months of incarceration and three years of supervised release (Case No. 5:05CR18, Dkt. No. 54).

CHILES v. UNITED STATES                          1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

knew he possessed a firearm but also that he knew he belonged to a category of persons barred from possessing a firearm) (Dkt. No. 5 at 3).

Before trial, Chiles moved to suppress the firearm and heroin found on his person during the traffic stop (Dkt. No. 49). In support of his motion, he argued that law enforcement (1) lacked probable cause to stop the vehicle in which he was riding; (2) lacked reasonable suspicion to detain him; (3) unlawfully and unnecessarily extended the traffic stop and the detention in order to conduct a K-9 drug sniff; and (4) did not have reasonable suspicion that he was armed and, consequently, had no basis to perform a frisk. Id.

The Court referred the motion to the Honorable Michael J. Aloi, United States Magistrate Judge (Dkt. No. 50), who recommended ("R&R") that the Court deny Chiles's motion (Dkt. No. 68). Chiles objected to the R&R (Dkt. No. 73), and after careful consideration the Court adopted Magistrate Judge Aloi's recommendation and denied Chiles's motion to suppress (Dkt. No. 74).

At trial, the Government presented evidence that, among other things, included body camera footage of Chiles admitting to a prior

5

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

felony conviction (Dkt. Nos. 89, 108 at 66, Government's Exhibit
2A), and the Judgment and Commitment Order ("J&C") from his prior
felon in possession felony conviction (Dkt. Nos. 89, 108 at 147,
Government's Exhibit 5). The Government also presented testimony
from two (2) witnesses, Townsend and Sarah Chadwick ("Chadwick"),
who testified that they had purchased drugs from Chiles in the
past (Dkt. No. 108 at 88, 119). Following a two-day trial, a jury
convicted Chiles on all counts (Dkt. No. 88). On August 6, 2018,
the Court sentenced him to 180 months of incarceration on Count
One, 180 months of incarceration on Count Two, to be served
consecutively to Count One, and 90 months of incarceration on Count
Three, to be served concurrently to Count One, to be followed by
concurrent terms of three (3) years of supervised release as to
each count of conviction (Dkt. No. 98). At his sentencing hearing,
Chiles objected for the first time to the legality of the
indictment in his case, arguing that it violated his rights under
the Fifth Amendment to the United States Constitution (Dkt. No.
106 at 9-32).

    Chiles filed a notice of appeal on August 9, 2018 (Dkt. No.
100). On appeal, he challenged the denial of his motion to suppress

CHILES v. UNITED STATES                              1:20CV80;1:18CR7

**MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS**

on grounds substantially similar to those he raised prior to trial. Opening Brief, at 9-10, United States v. Chiles, Case No. 18-4569 (4th Cir. 2019). On April 23, 2019, the United States Court of Appeals for the Fourth Circuit affirmed Chiles's conviction and sentence (Dkt. Nos. 109, 110), and denied rehearing and rehearing en banc on June 4, 2019 (Dkt. No. 112). Subsequently, the Supreme Court of the United States denied Chiles's petition for writ of certiorari on October 15, 2019 (Dkt. No. 118), thus making Chiles's sentence final on October 15, 2019.

On April 30, 2020, Chiles filed this petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Dkt. No. 129). He supplemented his petition on May 14 and June 3, 2020 (Dkt. Nos. 134, 137), and the Government filed its response on June 9, 2020 (Dkt. No. 138). Chiles again supplemented his petition on June 11, 2020 (Dkt. No. 139) and, on August 31, 2020, filed a reply to the Government's response (Dkt. No. 146).

Although Chiles asserts numerous grounds for relief in his petition, at bottom, the Court discerns five major issues: (1) whether Chiles's conviction is void based on alleged violations of his Fifth Amendment rights; (2) whether, pursuant to Rehaif, his

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

conviction is void because the Government failed to allege or prove that he knew he was a prohibited person; (3) whether his attorney was ineffective for failing to object to alleged subornation of perjury by the Government; (4) whether his attorney was ineffective for failing to impeach a witness; and (5) whether his attorney was ineffective for failing to appeal various other issues.

Additionally, on August 13, 2020, Chiles moved for "immediate discharge" from incarceration (Dkt. No. 142), and supplemented that motion on August 28, 2020 (Dkt. No. 144). Thereafter, on February 4, 2021, Chiles filed a "Motion to be Entirely Discharged from Judgment and Commitment Without Reversal of the Judgment" (Dkt. No. 156). All these motions reiterate that his conviction was in violation of his Fifth Amendment rights. Finally, on August 30, 2021, Chiles sought a ruling on his § 2255 petition (Dkt. No. 159). The matter is fully briefed and ripe for decision.

### II. Applicable Law

28 U.S.C. § 2255(a) permits federal prisoners who are in custody to assert the right to be released if their "sentence was imposed in violation of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such

CHILES v. UNITED STATES                          1:20CV80;1:18CR7

**MEMORANDUM AND OPINION ORDER DENYING**
**§ 2255 PETITION AND MISCELLANEOUS MOTIONS**

sentence," or if their "sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral attack."
A petitioner bears the burden of proving any of these grounds by
a preponderance of the evidence. See Miller v. United States, 261
F.2d 546, 547 (4th Cir. 1958).

### III. Discussion

**A. Section 2255 Petition**

**1. Fifth Amendment**

Chiles first argues that his conviction is void based upon
violations of his Fifth Amendment rights. He contends that the
indictment in his case was fatally defective because of numerous
procedural defects, including an insufficient number of grand
jurors present to deliberate, an insufficient number of grand
jurors agreeing to the return of an indictment, and the failure to
return the indictment in open court. Additionally, Chiles alleges
that the indictment was not signed by a representative of the
United States Attorney's Office. Based on these alleged defects,
Chiles contends that his entire case should have been dismissed
for lack of jurisdiction.

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. As the Court explained to Chiles at length during his sentencing hearing (Dkt. No. 106 at 9-32), the grand jury process begins when the Court orders that a grand jury be summoned. Fed. R. Crim. P. 6(a)(1). Once a grand jury, consisting of 16 to 23 qualified members is convened, the Government may present evidence of suspected crimes. Id. 6(a)(1), (d)(1). After such evidence has been presented, the grand jury deliberates in secret to determine whether to return a true bill. Id. 6(d)(2). The Government may not be present for those deliberations. Id. In order to return a true bill, at least twelve jurors must agree, and the returns must be presented to a judge in open court. Id. 6(f); see also Renigar v. United States, 172 F. 646, 650 (4th Cir. 1909) ("holding that it is essential to the validity of an indictment that it be presented in open court and in the presence of the grand jury"). These proceedings have a "presumption of regularity" attached to them. United States v. Alvarado, 840 F.3d 184, 189 (4th Cir. 2016) (internal quotation marks omitted).

CHILES v. UNITED STATES                           1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

Chiles's argument that the grand jury process contained numerous fatal defects is meritless. According to the sealed grand jury docket sheet, on February 6, 2018, grand jury proceedings took place (Dkt. No. 6-1), following which returns were made in open court before the grand jury. An indictment then issued against Chiles (Dkt. No. 6). As his evidence, Chiles contends that this grand jury proceeding was defective because the docket sheet entry lacks confirmation of compliance with all the relevant Federal Rules of Criminal Procedure. But there is no requirement in the Rules of Criminal Procedure requiring such an entry. Nor does Chiles have any evidence that an insufficient number of grand jurors were present, that an insufficient number of jurors agreed to the return of an indictment, or that the indictment was not returned in open court. Absent such evidence, he cannot overcome the "presumption of regularity" involving grand jury proceedings, Alvarado, 840 F.3d at 189, and therefore has failed to prove that his indictment was procedurally defective.

Fed. R. Crim. P. 7 requires that the "indictment . . . must be signed by an attorney for the government," Fed. R. Crim. P. 7(c)(1), and Fed. R. Crim. P. 6(c) requires that the grand jury

11

**MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS**

foreperson must "sign all indictments." Importantly, signatures on the indictment are not required to be displayed on the public docket. See United States v. Jones, No. 2:18-cr-237, 2019 WL 1746370, at *1 (S.D. Ohio 2019) (holding that an indictment with sealed signatures is valid); Outlaw v. United States, No. 1:13cv153, 2014 WL 12828968, at *5 (N.D. W. Va. 2014) (same); United States v. Mariner, No. 4:12-cv-072, 2012 WL 6082720, *7-9 (D.N.D. 2012) (same); United States v. McGee, No. 3:07-cr00634, 2009 WL 10697399, *2 (S.D. Iowa 2009) (same). Indeed, this Court's local rules provide that unredacted indictments shall "not be included in the public case file and will not be made available to the public at the courthouse or via remote electronic access." L.R. Gen. P. 6.01(c)(1).

Chiles appears to have confused the publicly docketed indictment with the actual, sealed indictment. The publicly docketed indictment contained only an "/s/" on the signature line for the United States Attorney (Dkt. No. 5); the sealed indictment, reviewed by the Court, contained the signature of a representative of the United States Attorney's Office (Dkt. No. 6). Numerous courts agree that such a procedure is perfectly valid. See Jones

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

2019 WL 1746370, at *1; Outlaw 2014 WL 12828968, at *5; Mariner

2012 WL 6082720, *7-9; McGee 2009 WL 10697399, *2. As well, it

also accords with the local rules promulgated by this Court.

Accordingly, the Court **DENIES** Chiles's motion to void his

conviction based on a violation of the Fifth Amendment.

### 2. **Rehaif v. United States**

Chiles next contends that, pursuant to Rehaif, the Government

failed to allege or prove that he knew he was a prohibited person

under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In Rehaif, the Supreme

Court held that, in a prosecution under 18 U.S.C. §§ 922(g) and

924(a)(2), the Government must prove both that the defendant knew

he possessed a firearm and also that he belonged to the category

of persons barred from possessing a firearm. Rehaif, 139 S. Ct. at

2195.

Because Chiles did not raise his Rehaif issues at trial or on

appeal, they have been procedurally defaulted. Bousley v. United

States, 523 U.S. 614, 621 (1998). Consequently, he is not entitled

to plain-error review, the standard of review applicable on direct

appeal. Greer v. United States, 141 S. Ct. 2090, 2096 (2021). But

Chiles can still obtain relief and avoid procedural default if he

13

CHILES v. UNITED STATES                           1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

is able to demonstrate both cause for the default and actual
prejudice due to the alleged errors. United States v. Frady, 456
U.S. 152, 167 (1982). For cause, a petitioner must "show that some
objective factor external to the defense impeded counsel's
efforts." Murray v. Carrier, 477 U.S. 478, 488 (1986). To
demonstrate prejudice, a petitioner must show that the alleged
errors "worked to his actual and substantial disadvantage,
infecting his entire trial with error of constitutional
dimensions." Frady, 456 U.S. at 170 (emphasis in original). Absent
a showing of both cause and prejudice, the only remaining avenue
for relief is that the petitioner was actually innocent of the
crime. Bousley, 523 U.S. at 622.

The Court recognizes that the decision in Rehaif occurred
after Chiles's trial and sentencing. However, Chiles's counsel
could have raised the relevant issue. Indeed, in the years prior
to Rehaif, numerous convictions were challenged on the ground that
the Government had failed to allege or prove knowledge of a prior
felony. See Oakes v. United States, No. 4:20-CV-00124-CDL-MSH,
2021 WL 5022393, at *5 (M.D. Ga. 2021) (collecting cases). And the
Supreme Court has opined that, while "'a claim that is so novel

14

CHILES v. UNITED STATES                                    1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default," if "the Federal Reporters were replete with cases involving [similar] challenges," there is no cause for failing to raise the issue. Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). Accordingly, because similar arguments were frequently made before Rehaif was decided, Chiles cannot show cause for his procedural default.

Although Chiles cannot show cause, the Court nevertheless must review his case for actual prejudice. Such review affords Chiles retroactive application because, at the time Rehaif was decided, his sentence was not yet final.[4] Griffith v. Kentucky, 479 U.S. 314, 328 (1987). Even with the benefit of Rehaif, however, Chiles cannot demonstrate actual prejudice.

As the Supreme Court has noted, "[i]n a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test" on direct

---

[4] Rehaif was decided on June 21, 2019, and the Supreme Court denied Chiles's petition for writ of certiorari on October 15, 2019.

CHILES v. UNITED STATES                              1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

review. Greer v. United States, 141 S. Ct. 2090, 2097 (2021). This
is because "[i]f a person is a felon, he ordinarily knows he is a
felon." Id. "Thus, absent a reason to conclude otherwise, a jury
will usually find that a defendant knew he was a felon based on
the fact that he was a felon." Id. (emphasis in original).
Accordingly, even though plain-error review does not apply in this
case, Greer is instructive because collateral review, and thus
actual prejudice, requires a "significantly higher hurdle than
would exist on direct appeal." Frady, 456 U.S. at 166.

While the fact that Chiles had a previous felon in possession
conviction suggests he knew about his prior felony as well as his
prohibited status, the Government also produced more than
sufficient evidence at trial to establish both. First, the
Government played body camera footage in which Chiles is heard
telling law enforcement about his prior convictions for drug and
firearm offenses, that he recently had been released from prison,
and had spent 18 years of his life in prison (Dkt. Nos. 89, 108 at
66, Government's Exhibit 2A). Second, the jury had before it the
Judgment and Commitment Order from his 2005 case, which reflected
that Chiles had been sentenced to 120 months of incarceration in

16

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

the Northern District of West Virginia, followed by three years of
supervised release. Chiles's conditions of supervised release
included the condition that he "shall not possess a firearm,
ammunition, destructive device, or any other dangerous weapon"
(Dkt. Nos. 89, 108 at 147, Government's Exhibit 5). Chiles's
concealment of the firearm, his previous felon in possession
conviction, and the condition of supervised release prohibiting
him from possessing a firearm strongly demonstrate that Chiles
knew about his prohibited person status.

Nor has Chiles rebutted this evidence. Given that he knew he
was a felon, and had admitted that fact to law enforcement, and
given that he had spent ten years in prison for a firearm
conviction and that, as a convicted felon, he was bound by a
condition of supervision that prohibited him from possessing a
firearm, sufficient evidence existed for the jury to conclude
Chiles knew he was a felon prohibited from possessing a firearm.
The Court therefore concludes that he was not prejudiced by the
failure of the indictment to allege such knowledge and has failed
to clear the "significantly higher hurdle" of proving prejudice.

CHILES v. UNITED STATES                          1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

Absent a showing of cause and prejudice, Chiles's only remaining argument is that he was actually innocent of the crime. Bousley, 523 U.S. at 622. To establish actual innocence, however, Chiles must demonstrate that, "'"in light of all the evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'" Id. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). This Chiles cannot do. Based on his own admission and the other evidence presented at trial, a reasonable juror easily could have concluded that Chiles knew about his prior felony conviction and that he was prohibited from possessing a firearm. Chiles therefore cannot overcome his procedural default on the Rehaif issues, and the Court therefore **DENIES** his motion to void his conviction.

### 3. Ineffective Assistance of Counsel

The Court turns next to Chiles's three ineffective assistance of counsel claims. To succeed on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner must "satisfy

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

both prongs, and a failure of proof on either prong ends the matter." United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

To satisfy the first prong of Strickland, the petitioner must show that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Id. at 687-88. But "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

To satisfy the second prong, the petitioner must demonstrate that counsel's inadequate performance prejudiced him. Id. at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

CHILES v. UNITED STATES                           1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

a. The Government's Alleged Subornation of Perjury

Chiles first argues that the Government twice suborned perjury during the testimony of Townsend, a government witnesses, and that his counsel failed to object on both occasions. He contends that Townsend initially testified there was "no way" for him to "know that [Chiles] had such a massive quantity [of heroin] on him" (Dkt. No. 108 at 103), but later agreed, at the suggestion of the Government, that "Chiles had . . . a massive quantity on him." Id. at 114-15. Chiles also alleges that Townsend first testified that he told law enforcement about his involvement with Chiles, id. at 115, but then later testified he never told law enforcement Chiles was his drug dealer. Id. at 116-17.

18 U.S.C. § 1621 contains the generally accepted definition of perjury. In United States v. Dunnigan, 507 U.S. 87, 94 (1993), the Supreme Court held that "[a] witness testifying under oath or affirmation violates [18 U.S.C. § 1621] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." See also 18 U.S.C. § 1621(1). Additionally, to prove subornation of perjury, three elements are

CHILES v. UNITED STATES                              1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

required: (1) "the suborner should have known or believed or have
had good reason to believe that the testimony given would be
false;" (2) "[the suborner] should have known or believed that the
witness would testify willfully and corruptly, and with knowledge
of the falsity;" and (3) [the suborner] "knowingly and willfully
induced or procured the witness to give false testimony." Petite
v. United States, 262 F.2d 788, 794 (4th Cir. 1959), vacated on
other grounds, 361 U.S. 529 (1960).

    Here, Chiles comes nowhere close to satisfying this rigorous
standard. He offers no evidence that Townsend "willful[ly]
intend[ed] to provide false testimony." Dunnigan, 507 U.S. at 94.
Nor does he present any evidence that the Assistant United States
Attorney conducting the questioning (1) "should have known or
believed" that Townsend's testimony "would be false," (2) "should
have known or believed" that Townsend "would testify willfully and
corruptly," or (3) "knowingly and willfully induced" Townsend to
testify falsely. Petite, 262 F.2d at 794.

    At best, the evidence demonstrates that Townsend's testimony
could have been clearer. But perjury cannot be the "result of
confusion, mistake, or faulty memory." Dunnigan, 507 U.S. at 94.

21

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

Accordingly, because of the lack of evidence, it was objectively reasonable for Chiles's attorney not to have objected at trial, and Chiles's arguments that Townsend perjured himself and that the Government suborned his perjury lack merit.

### b. Impeachment of Witness

Chiles next asserts that his counsel was ineffective in failing to impeach Townsend. He contends that, in his testimony, Townsend provided contradictory information about exactly what he told law enforcement about their relationship.

Impeachment consists of discrediting a witness, Impeachment, Black's Law Dictionary (11th ed. 2019), and here, contrary to Chiles's contention, his counsel did exactly that. First, he elicited testimony that Townsend did not speak with law enforcement, and then later elicited testimony that he did.

Several excerpts from Townsend's testimony establish this impeachment by contradiction. On cross-examination, Townsend testified that he didn't tell law enforcement about his relationship with Chiles:

> DEFENSE COUNSEL: You made statements to the police officers when you were stopped on November 2nd?
>
> TOWNSEND: Okay. Yeah.

22

CHILES v. UNITED STATES                          1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS
―――――――――――――――――――――――――――――――――――――――――――

DEFENSE COUNSEL: You told the officers you're going to
the hospital, you're taking Mr. Chiles to the hospital?

TOWNSEND: Correct.

DEFENSE COUNSEL: You told the officers that Mr. Chiles
needed a ride. There was some conversation that I think
you were in agreement with that Mr. Chiles' girlfriend
was sick?

TOWNSEND: Yes. She had, I believe a blood disease that
was affecting her hip.

DEFENSE COUNSEL: Okay. And you denied--when the officers
asked you, you denied that there were any drugs in the
car?

TOWNSEND: Yeah. To the best of my knowledge there was--
yeah, no drugs in the car.

DEFENSE COUNSEL: Okay. And you didn't tell the officers
anything about your relationship with Mr. Chiles, did
you?

TOWNSEND: No.

DEFENSE COUNSEL: You didn't tell the officers he had
sold drugs to you in the past?

TOWNSEND: No.

DEFENSE COUNSEL: You didn't tell the officers that you
had just taken a trip where--well you had maybe some
suspicions that Mr. Chiles had gotten some drugs in Ohio,
you didn't tell them that?

TOWNSEND: Didn't, no.

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

DEFENSE COUNSEL: You didn't tell them that he had ever been your so called drug dealer?

TOWNSEND: No.

(Dkt. No. 108 at 111-12).

On redirect examination, however, Townsend testified he had told law enforcement that he had picked up drugs for Chiles:

AUSA: And did law enforcement know back then that you were someone who was driving Mr. Chiles around to pick up drugs?

TOWNSEND: No.

AUSA: How did law enforcement learn [that] information?

TOWNSEND: From the stop when they found the drugs on him.

AUSA: Who's the person who told law enforcement?

TOWNSEND: What—

AUSA: Was it you?

TOWNSEND: That told them—

AUSA: About your involvement with Mr. Chiles?

TOWNSEND: Yes.

(Dkt. No. 108 at 115).

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

On recross, Chiles's counsel honed in on this contradiction and elicited testimony from Townsend that he had told law enforcement he worked for Chiles:

DEFENSE COUNSEL: You mentioned a self-disclosure. What does that mean a self--what does that mean, a self-disclosure? When did this self-disclosure happen?

TOWNSEND: When I was talking to the cops that were interviewing me.

DEFENSE COUNSEL: Last week?

TOWNSEND: No, at the--after the stop.

DEFENSE COUNSEL: And did you meet with officers—

TOWNSEND: I think it even happened like sort of toward the tail end of the stop when the officer--the third officer that arrived [] saw my arm and then made the--made his observation of my arm known to [Officer] Oziemblowsky because he noticed track marks on my arm.

DEFENSE COUNSEL: He noticed you were evidently a user of drugs?

TOWNSEND: Right.

DEFENSE COUNSEL: And—

TOWNSEND: And that's what started the whole conversation about me using.

DEFENSE COUNSEL: Okay. So you told him you were using?

TOWNSEND: Yeah. That's how they found out.

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS
_____

    DEFENSE COUNSEL: Okay. Did you also tell them that you
    had been selling drugs?

    TOWNSEND: I told him kind of like a middleman.

    DEFENSE COUNSEL: Broker?

    TOWNSEND: Yeah.

    DEFENSE COUNSEL: Broker drug deals. So you told them
    that you were brokering drug deals?

    TOWNSEND: In so few words, yeah.

    DEFENSE COUNSEL: Okay. And you haven't been charged with
    brokering drug deals?

    TOWNSEND: No, cause I--it was weird. Like I didn't really
    want to talk to them at all. I was kind of having a bad
    night and they were like--they were just kind of being
    chill with me and then really didn't even go anywhere.
    Eventually I just went back to my cell and they were
    like, all right, whatever.

    DEFENSE COUNSEL: And that night--that night you never
    told the officers that Emory Chiles was your drug dealer?

    TOWNSEND: No. I think they like inferred that
    themselves.

    DEFENSE COUNSEL: They thought that? They had that
    suspicion?

    TOWNSEND: Right.

(Dkt. No. 108 at 116-17).

    Townsend's contradictory testimony surrounding what he had

told law enforcement allowed Chiles's attorney to argue to the

26

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

### MEMORANDUM AND OPINION ORDER DENYING
### § 2255 PETITION AND MISCELLANEOUS MOTIONS

jury that Townsend lacked credibility and should not be believed
(Dkt. No. 152 at 30). Because Chiles cannot claim that his counsel
failed to impeach Townsend, he has failed to establish the first
prong of ineffective assistance of counsel under Strickland.

**c. Failure to Appeal Certain Issues**

Chiles also argues that his counsel was ineffective for
failing to raise certain issues on appeal. On appeal, counsel
challenged the trial court's denial of Chiles's motion to suppress.
But Chiles asserts that his counsel also should have argued that
(1) the Government failed to prove he used a firearm during and in
relation to a drug trafficking offense; (2) the Government failed
to prove he knowingly and intentionally distributed heroin; (3)
the trial court improperly restricted his counsel's scope of cross
examination; (5) the Government constructively amended the
indictment; and (6) the trial court failed to make adequate
findings of reasonable suspicion when it denied his motion to
suppress.

A defendant does not have "a constitutional right to compel
appointed counsel to press nonfrivolous points requested by the
client, if counsel, as a matter of professional judgment, decides

27

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). As the Supreme Court observed in Jones, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52. Indeed, Supreme Court Justice Robert H. Jackson once observed that "[e]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Id. (quoting Robert H. Jackson, Advocacy Before the Supreme Court, 25 Temple L.Q. 115, 119 (1951)).

Chiles's appellate counsel focused on whether the trial court had committed reversible error when it denied Chiles's motion to suppress. While Chiles may have wanted his attorney to make eight additional arguments, it was not an objectively unreasonable decision for his attorney to narrow the issues raised in an effort to improve the likelihood of success on appeal.

A careful review of the additional arguments that Chiles contends his counsel should have raised on appeal confirms that his counsel's decision to press the motion to suppress issue was objectively reasonable and strategic. Had this Court's decision on

CHILES v. UNITED STATES                                  1:20CV80;1:18CR7

**MEMORANDUM AND OPINION ORDER DENYING**
**§ 2255 PETITION AND MISCELLANEOUS MOTIONS**

the motion to suppress been reversed, the Government would have been prevented from admitting the firearm and heroin discovered on Chiles, thus effectively destroying its case.

The other arguments on which Chiles has focused were not nearly as consequential. Consider first the relative lack of merit to the argument that Chiles did not use a firearm during and in relation to a drug trafficking offense. Although Chiles did not use the firearm, 18 U.S.C. § 924(c)(1)(A)(i) allows for a conviction if the firearm was carried. Here, it is undisputed that law enforcement discovered the firearm on Chiles's person during a frisk, clearly establishing that it was carried (Dkt. No. 108 at 80). Moreover, despite the fact that the indictment charged Chiles both with using and carrying a firearm, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." United States v. Mingo, 237 F. App'x 860, 865 (4th Cir. 2007) (internal quotation marks omitted) (quoting United States v. Hawkes, 753 F.2d 355, 357 (4th Cir. 1985)).

CHILES v. UNITED STATES                        1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

Consider next Chiles's argument that he did not knowingly and intentionally distribute heroin within the meaning of 18 U.S.C. § 841(a)(1). Under § 841(a)(1), "[t]he knowledge requirement may [] be met by showing that the defendant knew the identity of the substance he possessed." McFadden v. United States, 576 U.S. 186, 192 (2015). In this case, over 100 grams of heroin were discovered on Chiles's person (Dkt. No. 108 at 17). Moreover, both Townsend and Chadwick testified that they previously had purchased heroin from Chiles (Dkt. No. 108 at 91, 123). Sufficient evidence thus established that Chiles knew the substance was heroin and that he intended to distribute it.

As to Chiles's argument that his attorney should have appealed the Court's ruling precluding counsel from asking Townsend about his prior arrest, Fed. R. Evid. 609 does not permit counsel to inquire about prior arrests, only prior convictions. This argument therefore lacks merit.

Chiles further contends that his attorney should have argued that the Government constructively amended the indictment at trial. He argues that the testimony elicited from Townsend and

30

CHILES v. UNITED STATES                      1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS

Chadwick broadened his charged crimes to include distribution of heroin.

A constructive amendment occurs "when the government . . . or the district court . . . 'broadens the possible bases for conviction beyond those presented by the grand jury.'" United States v. Moore, 810 F.3d 932, 936 (4th Cir. 2016) (quoting United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994)). Here, the Government did not broaden the possible bases for conviction, but rather presented the testimony of Townsend and Chadwick to prove, as charged, that Chiles intended to distribute the heroin.

Finally, Chiles asserts that his appellate counsel should have argued that the trial court failed to make adequate findings of reasonable suspicion when it denied his motion to suppress. But his attorney argued vigorously on appeal that law enforcement did not have reasonable suspicion to conduct a frisk of Chiles's person. Opening Brief, at 16-18, United States v. Chiles, Case No. 18-4569 (4th Cir. 2019). Chiles argument on this point therefore is wholly without merit.

Because all of the grounds raised by Chiles as evidence of ineffective assistance of counsel lack merit, the decision of

31

CHILES v. UNITED STATES                    1:20CV80;1:18CR7

MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS
_____

appellate counsel to focus his argument primarily on the denial of Chiles's motion to suppress was objectively reasonable. Chiles thus cannot satisfy the first prong of the test for ineffective assistance of counsel on any of these grounds.

**B. Miscellaneous Motions**

In addition to his § 2255 petition, Chiles filed a "Motion for Immediate Discharge" (Dkt. No. 142), which he later supplemented (Dkt. No. 144), and he also filed a "Motion to be Entirely Discharged from Judgment and Commitment Without Reversal of the Judgment" (Dkt. No. 156). These three motions are predicated on the argument that his indictment was invalid, which the Court has concluded lacks merit.

Finally, Chiles's motion seeking a ruling on his § 2255 motion (Dkt. No. 159) is moot.

## IV. Conclusion

For the reasons discussed, the Court **DENIES** Chiles's § 2255 petition (Dkt. No. 129) and the accompanying supplementary motions (Dkt. Nos. 134, 137, 139), and **DISMISSES** Civil Action Number 1:20CV80 **WITH PREJUDICE.** Because the record conclusively establishes that Chiles is not entitled to relief, there is no

CHILES v. UNITED STATES                          1:20CV80;1:18CR7

## MEMORANDUM AND OPINION ORDER DENYING
## § 2255 PETITION AND MISCELLANEOUS MOTIONS

need for the Court to conduct an evidentiary hearing. 28 U.S.C.
§ 2255(b); see Raines v. United States, 423 F.2d 526, 530 (4th Cir.
1970). Additionally, for the reasons discussed, the Court **DENIES**
Chiles's motions for immediate discharge (Dkt. Nos. 142, 144, 156),
and **DENIES** as moot his motion seeking a ruling on his § 2255
petition (Dkt. No. 159).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to enter a separate judgment Order
in Civil Action No. 1:20CV80, to transmit copies of both Orders to
counsel of record and the pro se petitioner, certified mail, return
receipt requested, and to strike Civil Action No. 1:20CV80 from
the Court's active docket.

## V. NO CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254
and Section 2255 Cases, the district court "must issue or deny a
certificate of appealability when it enters a final order adverse
to the applicant" in such cases. If the court denies the
certificate, "the parties may not appeal the denial but may seek
a certificate from the court of appeals under Federal Rule of
Appellate Procedure 22." 28 U.S.C. § 2255(a).

CHILES v. UNITED STATES                          1:20CV80;1:18CR7

**MEMORANDUM AND OPINION ORDER DENYING
§ 2255 PETITION AND MISCELLANEOUS MOTIONS**

The Court finds it inappropriate to issue a certificate of appealability in this matter because Chiles has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find any assessment of the constitutional claims by the district court debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record, the Court concludes that Chiles has failed to make the requisite showing and **DENIES** a certificate of appealability.

DATED: December 20, 2021

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

34